1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LAURIE THACKER, | ) | 1: 11-cv-00613-LJO-BAM |
| | ) | |
| | ) | **FINDINGS AND RECOMMENDATIONS** |
| | ) | **REGARDING PLAINTIFF'S** |
| Plaintiff, | ) | **SOCIAL SECURITY COMPLAINT** |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I.   INTRODUCTION

Plaintiff Laurie Thacker ("Plaintiff") seeks judicial review of an administrative decision denying her claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act").   Pending before the Court is Plaintiff's motion for summary judgment and the cross-motion for summary judgment of defendant Commissioner of Social Security ("Commissioner").  Plaintiff filed her complaint on April 15, 2011.  (Doc. 1.) Plaintiff filed her summary judgment motion on November 21, 2011. ( Doc. 15.)   The Commissioner filed his summary judgment cross-motion and opposition on March 23, 2011. (Doc. 16.)  Plaintiff filed her Reply Brief on January 5, 2012.  (Doc. 17.)  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument to United

States Magistrate Judge Barbara A. McAuliffe for findings and recommendations to United States District Judge Lawrence J. O'Neill.

## II.   BACKGROUND

### A.   Overview of Administrative Proceedings

On February 4, 2002, Plaintiff filed an application for disability benefits under Title II of the Act. (AR at 59.) After the agency denied her application initially and on reconsideration, an Administrative Law Judge ("ALJ") issued an unfavorable decision on February 27, 2003. (AR at 59-64.)

On April 30, 2007, Plaintiff filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Act, alleging disability since December 1, 2006. (AR at 129-139.) On October 24, 2007, Plaintiff's claims were denied initially, and on March 10, 2008, Plaintiff's claims were denied on reconsideration. (AR at 86-90, 95-99.) On April 22, 2008, Plaintiff requested a hearing before an ALJ. (AR at 104-05.) On October 22, 2009, the ALJ issued a written decision finding the Plaintiff not disabled. (AR at 18-25.)

This became the final decision of the Commissioner of Social Security when the Appeals Council declined relief. (AR at 1-5.) Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).

### B.   Plaintiff's Background

Plaintiff was born on October 10, 1957. (AR at 29.) Plaintiff completed her twelfth grade education and took some college classes. (AR at 32.) Plaintiff additionally went to school to become a truck driver, and also went to school to become a paramedic. (AR at 32.) Plaintiff previously worked as a truck driver, paramedic, nursing assistant, tow truck dispatcher, housekeeper and waitress. (AR at 32, 53.)

In July of 2008, Plaintiff overdosed on her medication in an attempt to commit suicide. (AR at 30.) Plaintiff alleges this caused her to ruin all the nerves and muscles in her right leg, because she remained in the same position for approximately 11 hours. (AR at 30.)

Plaintiff alleges disability beginning December 1, 2006, due to a combination of the following impairments: (1) vision loss; (2) bipolar disorder; (3) depression; (4) fibromyalgia; and (5) neck, shoulder and back pain.  (AR at 37, 41.)

**C.    Plaintiff's Testimony At the Administrative Hearing**

On May 12, 2009, Plaintiff testified before the ALJ regarding her claim for disability. (AR at 26-57.)  Plaintiff was represented by counsel.  David M. Dettmer, an impartial vocational expert (the "VE"), also appeared at the hearing.[1]  *Id.*

Plaintiff is unmarried, and currently lives in an apartment with her boyfriend.  (AR at 33.) Plaintiff arrived at the hearing in a wheelchair, wearing sunglasses.  (AR at 29-30.)  Plaintiff testified she needed the sunglasses because light, even fluorescent lighting, forces Plaintiff to close her eyes.  *Id.*   Plaintiff testified she requires use of the wheelchair due to the damage in her sciatic nerve as a result of her July 2008 suicide attempt. (AR at 30).  The wheelchair was prescribed by Dr. Borquest - Plaintiff's treating physician of approximately one year - following the suicide attempt.  (AR at 31.)  Plaintiff does not currently have a driver's license, and has not driven a car since December of 2006.  (AR at 34.)

Plaintiff testified that her fibromyalgia causes pain and stiffening in her neck, shoulders, arms, back, hips and legs.  (AR at 37.)  Plaintiff testified she could not stand long enough to take a shower.  (AR at 49-50.) Plaintiff testified the fibromyalgia in her shoulders would cause her to have problems reaching forward.  (AR at 40-41.)

Plaintiff has bipolar disorder, which causes highs and lows. (AR at 41-43.)  The highs are characterized by sleeplessness and exhaustion.  *Id.*   The down times leave her unable to do anything.  *Id.*  Plaintiff is embarrassed and forgetful going out in public and does not tolerate other people well. (AR at 45.)  Plaintiff testified she could only concentrate for a half an hour at a time. (AR at 41, 46.)

---

[1] Based on the ALJ's finding that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels, with the limitation that Plaintiff is to wear gray filters for glare reduction and bifocal glasses, the VE testified Plaintiff could perform her past relevant work as a waitress, housekeeper, or tow truck dispatcher. (AR at 54.)

**D.     Medical History**

The entire medical record was reviewed by the Court.  (AR at 197-685.)  The medical evidence will be referenced below to the extent it is necessary to the Court's decision.

**1.     Medical Evidence Provided By Plaintiff's Treating Physician, Dr. Warren O. Borgquist**

The Record contains medical evidence from Plaintiff's treating physician, Dr. Warren Borgquist, from 2008-2010.   On April 15, 2008, Dr. Borgquist wrote that Plaintiff complained of generalized pain all over her body that she called fibromyalgia.  (AR at 635.)  Dr. Borgquist found Plaintiff's story relating to her visual impairments "very strange."  (AR at 635.)  Plaintiff told Dr. Borgquist that one morning "her eyes popped out." (AR at 635.)  Plaintiff went to the local ophthalmologist who accused her of putting some chemical in her eyes to inflame them. (AR at 635.)  Plaintiff had ulcerations on her cornea, was seen by multiple ophthalmologists, all of whom could not identify a medical reason for her visual problems.  (AR at 635.)  The swelling in Plaintiff's eyes "apparently spontaneously resolved."  (AR at 635.)  Dr. Borgquist noted that Plaintiff's photophobia was so severe that he couldn't shine a light in her eye.  (AR at 635-6.) With respect to Plaintiff's physical complaints, Dr. Borgquist noted that while Plaintiff was tender to all muscle groups upon palpation, because Plaintiff said it felt good rather than painful, the tenderness may be autoimmune and not fibromyalgia.  (AR at 636.)

On May 13, 2008,  May 27, 2008, and July 8, 2008, Dr. Borgquist diagnosed Plaintiff with Bipolar mood disorder.  (AR at 624, 625, 627.)  In October 2008, Dr. Borgquist found Plaintiff to be tender all over from her fibromyalgia, including around the neck, but not in her arms.  (AR at 617.)  Dr. Borgquist stated Plaintiff had some neck stiffness and pain.  (AR at 617.) Dr. Borgquist also diagnosed Plaintiff with right leg palsy and nerve damage from her drug overdose in July of 2008.  (Ar at 617.)   Dr. Borgquist, however, observed that Plaintiff moved around and was able to walk.  (AR at 617.)

In December 2008, Dr. Borgquist stated that mediation fairly controlled her sciatic nerve palsy.  (AR at 614-616.)  Dr. Borgquist also noted Plaintiff was "quite stable" with her moods

using mediation. (AR at 614-616.)  As of February 2009, Plaintiff's nerve in her right leg was growing back.  (AR at 615.)

In March 2009, Dr. Borgquist filled out a questionnaire opining as follows: (1) Plaintiff's medically determinable impairments precluded her from performing any full-time work at any exertional level; and (2) Plaintiff needed to change positions regularly and needed to lie down or elevate her legs 1-3 hours a day.  (AR at 673.)

In August of 2009, Dr. Borgquist opined Plaintiff was disabled from her pain and mood disorder. (AR at 676-670.)  Dr. Borgquist opined that Plaintiff would continue to be disabled even if her mood disorder was later controlled, due to her continuing fibromyalgia pain.  (AR at 679.)

In September of 2009, Dr. Borgquist noted Plaintiff demonstrated tenderness in all muscle groups from the elbows and knees up, however, not in her calves and forearms.  (AR at 674.)  Plaintiff was also tender along the spine.  (AR at 674.)  Dr. Borgquist determined Plaintiff had fibromyalgia.  (AR at 674.)  Dr. Borgquist opined Plaintiff was unable to work due to the combination of mood disorder and fibromyalgia pain.  (AR at 674-5.)

In May of 2010, Dr. Borgquist noted Plaintiff was tender in all of the fibromyalgia spots required for the diagnosis, however, Plaintiff had adequate control of her multiple muscle pain disorder. (AR at 683.)  Dr. Borgquist also noted that Plaintiff was "doing better than she has ever done with her mood swings," and that her mood fluctuations were "markedly improved" by her medications.  (AR at 683.)

**F.    ALJ Findings**

In reaching his decision that Plaintiff has not been under a disability within the meaning of the Social Security Act since June 28, 2008, the ALJ made the following findings:

1.    Plaintiff has not engaged in substantial gainful activity since December 1, 2006, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*);

2.    Plaintiff has the severe impairment of factious conjunctivitis (20 CFR 404.1520(c) and 416.920(c));

3.      Plaintiff does not have an impairment or combination of impairments that meets

or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P,

Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and

416.926).

4.      Plaintiff's Residual Functional Capacity: Plaintiff has a residual functional

capacity to perform a full range of work at all exertional levels, with the limitation

that Plaintiff is to wear gray filters for glare reduction and bifocal glasses;

5.      Plaintiff is capable of performing her past relevant work of as a waitress,

housekeeper and two truck dispatcher.  This work does not require the

performance of work-related activities precluded by Plaintiff's residual functional

capacity;

6.      Plaintiff does not have a disability within the meaning of the Social Security Act.

(AR at 20-25.)

## III.    DISCUSSION

### A.    Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision.
*See* 42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an
ALJ, when the determination is not based on legal error and is supported by substantial evidence.
*See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  Substantial evidence is "more than a
mere scintilla," *see Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a
preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  Substantial
evidence "means such evidence as a reasonable mind might accept as adequate to support a
conclusion."  *Richardson*, 402 U.S. at 401.  If the evidence could reasonably support a finding of
either disability or non-disability, the finding of the Commissioner is conclusive.  *Sprague v.
Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

In order to qualify for benefits, a claimant must establish that he is unable to engage in
substantial gainful activity due to a medically determinable physical or mental impairment which
has lasted or can be expected to last for a continuous period of not less than twelve months.  42

U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, *inter alia*, a five-step sequential disability evaluation process.  20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f).  Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since June 28, 2006; (2) has an impairment that is considered "severe" based on the requirements in the Regulations (20 CFR §§ 416.920(c)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in 20 CFR Part 404, Subpart P, Appendix 1; (4) did not have any exertional, postural or manipulative limitations and could perform her past relevant work as a fruit seller; and (5) could perform jobs that exist in significant numbers in the national economy.  (AR at 15-19.)

Plaintiff argues the ALJ's finding of non-disability is erroneous for three reasons: (1) The ALJ erred in discrediting Plaintiff's subjective symptom testimony; (2) The ALJ did not provide specific and legitimate reasons for rejecting the medical opinion evidence of Dr. Borgquist; and (3) The error in evaluating the medical opinion evidence of Dr. Borgquist resulted in error at Step Two in finding that Plaintiff did not have the severe impairment of fibromyalgia.

Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).

/././

**B.     The ALJ's Evaluation of Plaintiff's Subjective Symptom Testimony**

    **1.     Legal Standard**

A two step analysis applies at the administrative level when considering a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id*. at 1281-1282. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Id*. at 1281. The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen,* 80 F.3d at 1284; *Orn v. Astrue,* 495 F.3d 625, 638 (9th Cir. 2007).

    **2.     The ALJ's Credibility Determination With Respect to Plaintiff's Visual Impairments Was Based on Clear and Convincing Reasons**

In rejecting Plaintiff's testimony concerning the intensity, persistence and limiting effects of her visual impairments, the ALJ stated the following:

"[T]he claimant's medical records show that various ophthalmologists doubt her credibility and surmised that claimant put something in her eye to artificially manufacture the condition [citation]. Dr. Ivan Schwab, treating ophthalmologist, stated on May 21, 2007 that he found very little wrong with claimant's eyes, could no longer support the claimant's disability, and expressed concern about the potential of a "California syndrome." He still had no diagnosis for her initial eye condition, nor did another treating ophthalmologist. . .

Other medical evidence supports the level of improvement Dr. Schwab found with the claimant's vision [citation]. In fact, on May 5, 2008, Dr. Schwab stated that he was able to fix the claimant's vision to 20/40, and believed that he can do better with good refraction and that her visual acuity is pretty normal. . .

Both Dr. Saddy Reddy and Dr. E.N. Pearson, state medical consultants, stated on March 5, 2008 and June 12, 2007, respectively, that claimant's alleged vision loss is not severe. . . .

[C]laimant's vision has improved tremendously but at best, her vision is 20/40 and 20/30 with a hyperopic refraction in both eyes. [citation.]

(AR at 21, 24.)

The ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony concerning the intensity, persistence and limiting effects of her visual impairments. The Record shows that various doctors doubted Plaintiff's credibility, and believed Plaintiff purposefully manufactured her visual condition. (AR at 331, 616, 634.) Plaintiff's two treating ophthalmologists did not believe Plaintiff had a severe visual impairment. (AR at 301, 317-18, 331.) Both State Agency physicians opined that Plaintiff's vision impairment was non-severe. (AR 217-218, 302-03.) The ALJ also expressed skepticism regarding the origins of this "strange situation," i.e. that "Plaintiff's eyes suddenly popped out" and later "spontaneously resolved." (AR at 21.) These are clear and convincing reasons for rejecting Plaintiff's visual impairment testimony.

**3.      The ALJ's Credibility Determination With Respect to Plaintiff's Bipolar Disorder Was Based On Clear And Convincing Reasons**

In rejecting Plaintiff's testimony concerning the intensity, persistence and limiting effects of her Bipolar disorder, the ALJ stated the following:

Although the medical records show that the claimant has a history of bipolar disorder, depression, and dysthmic disorder, the evidence fails to document any of them as severe mental impairment since the evidence shows only mild restrictions in activities of daily living, mild difficulties in social functioning, mild difficulties in concentration, persistence, or pace, and no episodes of decompensation. In

fact, the claimant told her treating psychiatrist on January 14, 2008 that other than her vision impairment, she is in perfectly good health . . .

In her activities of daily living, the claimant faces mild restrictions because she is capable of caring for her personal needs, carrying out her daily duties, and her psychomotor activity is within normal limits. [citation [2].] Furthermore, despite the claimant's allegations, the record as a whole does not show that the claimant cannot perform her activities of daily living due to mental impairments. In the area of social functioning, the claimant has mild limitation based on the level of interaction and connection she has with others and her observable social skills. [citation[3].] Regarding the claimant's concentration, persistence or pace, the claimant has mild limitation.  Though the claimant made subjective allegations to show why she was extremely limited in this area, more objective sources state otherwise based on observations and assessments on the claimant's judgment, insight, and demonstrated cognitive capabilities. [citation[4].] Though claimant testified she cannot make sense in her conversations, her testimony was, nevertheless, clear.  As for episode decompensation, the record does not show that the claimant experienced any which have been of extended duration.  Finally, the record as a whole shows that the claimant lacks a severe mental impairment based on her drastic improvement which was even noticeable to those around her, lack of compliance, observations and conclusions from treating doctors, lack of evidence that her GAF score continued at low levels for 12 months, and the effect of her medications [citation[5]] . . .

On October 19, 2007 and March 6, 2008, Dr. Aquino-Caro and Dr. Middleton concluded that the claimant's depression shows mild limitations and difficulties in

---

[2] The ALJ cites to a functional report, completed by Plaintiff, listing the following activities: bathing herself, dresses herself, does not require assistance taking care of personal needs and grooming, laundry, travels to the store and doctors appointments, goes shopping, goes camping, and socializes with friends. (AR at 167-174.) Plaintiff also specifically stated she can care for her personal needs. (AR at 190.)

[3] The ALJ cites to the medical opinions of examining psychologist, Deborah Von Bolschwing, Ph. D., who opined that Plaintiff interacted appropriately and had adequate ability to interact with the public, supervisors and coworkers.  (AR at 222.) The ALJ also cited to the medical opinion testimony of Medical Consultant Evelyn B. Aquino-Caro, who opined that Plaintiff was not significantly limited in any category relating to social interaction or adaption. (AR at 235.)  The ALJ further cited to the medical opinion testimony of examining physician Alan Peters, M.D., who opined that Plaintiff's psychomotor activity was within normal limits, and there was no evidence to suggest any formal thought disorder or evidence of any psychosis.  (AR at 274.)

[4] The ALJ cites to the medical opinions of examining psychologist, Deborah Von Bolschwing, Ph. D., who opined that Plaintiff was alert and oriented, her speech was clear and coherent, thought process was linear, thought content was logical and there was no signs of a thought disorder.  Dr. Bolschwing further opined that Plaintiff was able to understand and remember simple, detailed, and complex instructions, and was able to maintain concentration for the duration of the evaluation during verbal tasks.  (AR at 220-222.)  The ALJ also cited to the medical opinion testimony of Medical Consultant Evelyn B. Aquino-Caro, who opined that Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions, however, was not otherwise significantly limited with respect to any understanding, memory, concentration or persistence categories. (AR at 234-5.)  The ALJ further cited to the medical opinion testimony of examining physician Alan Peters, M.D., who opined that Plaintiff was cognitively intact, oriented to all spheres with a clear sensorium, with fair insight, and Plaintiff's judgment was intact. (AR at 274.)

[5] In making this finding, the ALJ cited to the medical opinions of  Deborah Von Bolschwing, Ph. D, and Alan Peters, M.D. (AR at 219-222, 259-274.)

1  her activities of daily living, social functioning, concentration, persistence, or
   pace, no episodes of decomposition for an extended duration. [citation.] Dr.
2  Aquino-Caro and Dr. Middleton concluded that the claimant's depression is not
   severe. [citation.] Since Dr. Aquino-Caro's and Dr. Middleton's assessments are
3  consistent with the medical record, as discussed above, substantial weight is given
   to their evaluations. [<sup>6</sup>]
4

5  (AR at 22-24); *See also* AR at 24 (the ALJ noted that Plaintiff's self-reporting information

6  concerning her mental impairments may not be reliable, referring to the unreliability of Plaintiff's

7  claimed visual impairments).

8       The ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony

9  concerning the intensity, persistence and limiting effects of her mental impairments.  The ALJ

10 properly noted that despite Plaintiff's claimed limitations, her performance at the administrative

11 hearing and admitted ability to care for her own personal needs contradicts these claimed

12 limitations.  The ALJ properly noted that four examining and consulting physicians found

13 Plaintiff's mental impairments presented no more than mild difficulties with respect to social

14 functioning, concentration, persistence, pace, understanding and activities of daily living.

15 Moreover, the ALJ noted the opinion of Plaintiff's treating physician, Dr. Borgquist, who, while

16 opining that Plaintiff was disabled as a result of her Bipolar disorder, stated that Plaintiff "is

17 quite stable" on her medications which fairly controlled this condition.   These reasons are clear

18 and convincing.

19 **4.     The ALJ's Credibility Determination With Respect to Plaintiff's Physical**

20 **Limitations Was Based on Clear and Convincing Reasons**

21      Plaintiff argues the ALJ improperly rejected Plaintiff's testimony with respect to two

22 physical impairments: (1) fibromyalgia pain in the neck, shoulders, back and extremities; and (2)

23 right leg pain resulting from nerve damage. Plaintiff testified that her fibromyalgia pain in the

24 shoulders made reaching in front difficult.  Plaintiff also testified that standing for even short

25 periods of time is difficult.

26

27 ────────────

28    <sup>6</sup> The ALJ also cited to the statement of Plaintiff's treating physician, Dr. Borgquist, who opined that
   Plaintiff "is quite stable on her Topamax . . . Her partner says she has never been so stable with her moods in her
   life." (AR at 315.)

                                              11

i.      **Fibromyalgia Claims**

In rejecting Plaintiff's testimony concerning the intensity, persistence and limiting effects of her fibromyalgia, the ALJ stated the following**:**

> Despite claimant's complaints of . . . neck and back pains, her medical records do not provide objective medical evidence that she ever had . . . any severe impairment related to her neck or back . . .
>
> Though some medical records . . . may refer directly or indirectly to other impairments, the record does not indicate that they more than minimally interfere with claimant's ability to function at work.

(AR at 21, 23).  Throughout his opinion, the ALJ also noted that Plaintiff's exaggeration with respect to her visual impairments cast doubt on her credibility with respect to her other claimed impairments.  (AR at 21) (" . . . claimant's lack of credibility and her various allegations regarding her vision . . ."); (AR at 24) (". . . claimant's self-reported information, which is not always reliable, as seen from her allegations regarding her visual condition.")

The ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony concerning the intensity, persistence and limiting effects of her fibromyalgia.  The ALJ's determination that Plaintiff lacked credibility based on his own impressions, as well of those of Plaintiff's physicians, is substantial evidence.  *See Tonapetyan v. Halter,* 242 F.3d 1144, 1148 (9th Cir. 2001) (holding that a credibility determination based on, among other things, a tendency to exaggerate, was supported by substantial evidence.); *Thomas v. Barnhart,* 278 F.3d 947, 958-959 (9th Cir. 2002) (ALJ may rely on doctor's observation of a claimant's exaggeration of her complaints).  "Fibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community."  *Benecke v. Barnhart,* 379 F.3d 587, 590 (9th Cir.2004).  There are no laboratory tests to confirm the diagnosis, and "[t]he disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms."  *Id*. at 590.  As such, an ALJ's proper determination that a claimant is exaggerating her symptoms, or other wise lacks credibility with respect to her subjective symptom testimony, is a proper basis for determining a claimant did not have the severe impairment of fibromyalgia.  *See Barry v. Astrue,* 2011 WL 165388 (C.D. Cal.

2022) ("The ALJ's rejection of Plaintiff's pain testimony supports his determination that Plaintiff

did not have the severe impairment of fibromyalgia.")

### ii.    Nerve Damage In Plaintiff's Right Leg

In rejecting Plaintiff's testimony concerning the intensity, persistence and limiting effects

of her sciatic nerve problems in her right leg, the ALJ stated the following**:**

> Though this condition [plaintiff's nerve problems in her right leg] has not
> completely resolved, it has drastically improved, as evidenced by the medical
> records. By October, 2008, a few months after the problem began, the doctor was
> encouraging the claimant to continue walking and was prescribing to treatment
> other than pain mediation. In December, 2008 the sciatic nerve palsy was said to
> be well controlled. In February , 2009, the most recent record, the nerve was said
> to be growing back. Since the record as a whole does not show the problems
> associated with claimant's sciatic nerve have lasted at a severe level for 12
> continuous months, and in fact, demonstrates they have improved, they are
> deemed not be severe. . .

(AR at 611-630.)[7] Moreover, Plaintiff's negative credibility finding, and her tendency to

exaggerate her symptoms, influenced the ALJ's finding. (AR at 21, 24.)

The ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony

concerning the intensity, persistence and limiting effects of the sciatic nerve problems in her right

leg. Plaintiff's nerve problems began in July of 2008. Beginning in October of 2008, Plaintiff's

own treating physician observed that medication "fairly controlled" Plaintiff's sciatic nerve palsy,

and Plaintiff was advised to continue walking without the assistance of a wheelchair. *See Warre*

*v. Comm'r of the SSA,* 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled

effectively with medication are not disabling for the purpose of determining eligibility for SSI

benefits.") Plaintiff's continued improvement was further evidenced in February of 2009, when

Dr. Borgquist opined Plaintiff's nerve was growing back.[8] Based on the objective medical

evidence, the ALJ properly concluded that Plaintiff's sciatic nerve condition did not present a

severe impairment for a continuous twelve months. *See, Cordoba v. Astrue,* 2011 WL 4565578

---

[7] The medical evidence cited by the ALJ which contradicts Plaintiff's subjective symptom testimony is from
Plaintiff's treating physician, Dr. Borgquist. (AR at 611-617.)

[8] Notably, Plaintiff's appearance at the administrative hearing in a wheelchair in May of 2009, despite these
objective improvements, further supports the ALJ's opinion that Plaintiff's symptoms were largely exaggerated.

1   (E.D. Cal. 2011) ("the evidence was lacking in that it did not convincingly demonstrate that

2   plaintiff's impairments persisted in their severity level for a continuous 12–month period.")

3

4   **D.      The ALJ's Medical Opinion Testimony Evaluation**

5           **1.      Legal Standard**

6           In the hierarchy of physician opinions considered in assessing a social security claim,

7   "[g]enerally, a treating physician's opinion carries more weight than an examining physician's,

8   and an examining physician's opinion carries more weight than a reviewing physician's."

9   *Holohan v. Massanari,* 246 F.3d 1195, 1202 (9th Cir.2001); 20 C.F.R. § 404.1527(d)(1)-(2). The

10  opinion of an examining physician is entitled to greater weight than the opinion of a

11  nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v.*

12  *Heckler*, 753 F.2d 1450 (9th Cir.1984).  The Commissioner must provide "clear and convincing"

13  reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at

14  506.  If contradicted by another doctor, the opinion of an examining doctor can only be rejected

15  for specific and legitimate reasons that are supported by substantial evidence in the record.

16  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). "This burden can be met by providing a

17  detailed summary of the facts and conflicting clinical evidence, along with a reasoned

18  interpretation thereof." *Rodriguez v. Bowen,* 876 F.2d 759, 762 (9th Cir. 1989).

19          Notwithstanding the above discussion, an ALJ is not required to accept an opinion of a

20  treating physician, or any other medical source, if it is conclusory and not supported by clinical

21  findings. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  Additionally, an ALJ is not

22  bound to a medical source's opinion concerning a claimant's limitations on the ultimate issue of

23  disability.  *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989).  If the record as a whole

24  does not support the medical source's opinion, the ALJ may reject that opinion.  *Batson v.*

25  *Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1195 (9th Cir. 2004).  Items in the record that may

26  not support the physician's opinion include clinical findings from examinations, conflicting

27  medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*;

28

1   *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart,* 340 F.3d 871 (9th Cir.

2   2003); *Morgan v. Comm'r of Soc. Sec. Admin*., 169 F.3d 595 (9th Cir.1999).

3

4       **2.      The ALJ Provided Specific And Legitimate Reasons for Rejecting Dr.**

5           **Borgquist's Opinions With Respect to Mental Limitations**

6       Plaintiff argues the ALJ improperly rejected Dr. Borgquist's medical opinion testimony

7   concerning the disabling effects of Plaintiff's bipolar disorder, because they were supported by

8   objective medical evidence.  As Dr. Borgquist's opinions were contradicted by three other

9   physicians, *See* supra Section IV.B.3., the ALJ was required to provide specific and legitimate

10  reasons for rejecting Dr. Borgquist's opinion testimony.  In rejecting Dr. Borgquist's testimony

11  that Plaintiff's bipolar disorder was disabling, the ALJ stated the following**:**

12          Though Dr. Borgquist stated that no one would or could employ the claimant
            based on her bipolar disorder alone, he only provided assertions to support his
13          claim rather than objective medical evidence, as well as the claimant's self-
            reported information, which is not always reliable, as seen from her allegations
14          regarding her visual condition. . .Moreover, according to Dr. Borgquist's February
            2, 2009 treatment note, her moods were reportedly more stable than ever in her
15          life with the prescription Topomax.

16  (AR at 24.)

17      The ALJ provided specific and legitimate reasons for rejecting Dr. Borgquist's medical

18  opinion testimony concerning the disabling effects of Plaintiff's bipolar disorder.  An ALJ is not

19  required to accept an opinion of a treating physician, or any other medical source, if it is

20  conclusory and not supported by clinical findings.  *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th

21  Cir. 1992.)  Additionally, an ALJ is not bound to a medical source's opinion concerning a

22  claimant's limitations on the ultimate issue of disability.  *Magallanes v. Bowen,* 881 F.2d 747,

23  751 (9th Cir. 1989). That Dr. Borgquist's medical opinions were formed based on Plaintiff's

24  subjective complaints, rather than objective medical evidence, is a specific and legitimate reason

25  for rejecting his findings. *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008 ("An ALJ

26  may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-

27  reports that have been properly discounted as incredible.") This is especially true considering the

28

credibility of Plaintiff's complaints were properly called into question.  Lastly, Dr. Borgquist's

conflicting notes regarding the effectiveness of Plaintiff's mediation is a specific and legitimate

reason for rejecting his conclusory findings on Plaintiff's disability. *Bayliss v. Barnhart*, 427

F.3d 1211 (9th Cir. 2005)

**3.**     **The ALJ Provided Clear and Convincing Reasons for Rejecting Dr.**

**Borgquist's Opinions With Respect to Physical Limitations**

Plaintiff argues the ALJ improperly rejected Dr. Borgquist's medical opinion testimony

concerning the disabling effects of Plaintiff's fibromyalgia and sciatic nerve disorder, because

these findings were supported by objective medical evidence.  Specifically, the ALJ rejected Dr.

Borgquist's opinion that Plaintiff could only sit for 1 - 1.5 hours without rest or support, that

Plaintiff needed to change positions frequently when standing or walking, and that Plaintiff

needed to elevate her legs or lie down1 - 3 hours a day.  In rejecting Dr. Borgquist's testimony

that Plaintiff's physical impairments were disabling, the ALJ stated the following:

> Though this condition [plaintiff's nerve problems in her right leg] has not
> completely resolved, it has drastically improved, as evidenced by the medical
> records.  By October, 2008, a few months after the problem began, the doctor was
> encouraging the claimant to continue walking and was prescribing to treatment
> other than pain mediation.  In December, 2008 the sciatic nerve palsy was said to
> be well controlled. In February , 2009, the most recent record, the nerve was said
> to be growing back. . . [9]
>
> Though some medical records, including those from nurse practitioners, may refer
> directly or indirectly to other impairments, the record does not indicate that they
> are more than minimally interfere with the claimant's ability to function at work...
>
> Though Dr. Borgquists opinion may be supported by the claimant's subjective
> complaints associated with her back and neck pains, it is not backed with any
> objective medical evidence. . .

(AR at 21-25.)  Moreover, Plaintiff's negative credibility finding, and her tendency to exaggerate

her symptoms, influenced the ALJ's finding.  (AR at 21, 24.)  The ALJ also noted that on

January 14, 2008, Plaintiff told her psychiatrist Maximo A. Parayno M.D., that other than her

vision impairment, she was in perfectly good health.  (AR at 261.)

---

[9] The medical evidence cited by the ALJ was provided by Dr. Borgquist, which contradicts Dr. Borgquist's
conclusions regarding the disabling effects of Plaintiff's medical condition.  (AR at 611-617.)

1      The ALJ provided clear and convincing reasons for rejecting the medical testimony or Dr.

2  Borgquist concerning the disabling effects of Plaintiff's medical conditions.  The ALJ properly

3  noted Dr. Borgquist's contradictory finding that Plaintiff's sciatic nerve condition was

4  continually improving.  *See Morales v. Astrue*, 300 Fed. Appx. 457, 459 (9th Cir. 2008)

5  ("Medical improvement is a clear and convincing reason . . .") The ALJ noted that there was no

6  indication Plaintiff's fibromyalgia caused any additional limitations, because the pain was

7  adequately controlled.  *See Warre v. Com. of Soc. Sec.,* 439 F.3d 1001, 1006 (9th Cir. 2006) ( an

8  impairment that is amenable to control cannot be a basis for disability); *Burch v. Barnhart,* 400

9  F.3d 676, 683 (9th Cir. 2005) ("the claimant did not offer any theory, plausible or otherwise, as to

10  how his impairments combined to equal a listing impairment"); *see also, Melendez v. Astrue,*

11  2011 WL 6402287 (C.D. Cal. 2011) ("A diagnosis of fibromyalgia is not a free disability card

12  that renders all medical evidence irrelevant for all purposes.")  Lastly, The ALJ noted that Dr.

13  Borgquist's medical opinions were based on Plaintiff's subjective complaints, which had been

14  determined to lack credibility, rather than objective medical evidence.  *See Tommasetti v. Astrue,*

15  533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is

16  based 'to a large extent' on a claimant's self-reports that have been proerly discounted as

17  incredible.") The ALJ provided clear and convincing reasons to reject Dr. Borgquist's medical

18  opinion testimony.

19  **E.**    **The ALJ Did Not Err At Step Two**

20      Plaintiff argues that because the ALJ gave insufficient reasons to reject Dr. Borgquist's

21  opinion concerning the severity of Plaintiff's fibromyalgia, the ALJ erred at Step Two.  An

22  impairment or combination of impairments may be found not severe if the alleged impairment

23  "has not more than a minimal effect on an individual's ability to work."  *Webb v. Barnhart,* 433

24  F.3d 683, 686-87 (9th Cir. 2005).

25      The ALJ provided clear and convincing reasons to reject the medical opinion testimony

26  of Dr. Borgquist.  Additionally, the ALJ cited substantial evidence in the record to support his

27  conclusion that Plaintiff's fibromyalgia was not severe.  Moreover, the ALJ specifically found

28

1   that Plaintiff's claimed physical impairments had only a minimal effect on her ability to work.

2   Accordingly, the ALJ did not err at Step Two.

3   **F.    Plaintiff's Remaining Arguments Are Waived[10]**

4          As a general rule, issues raised for the first time in a reply brief are waived.  *See Singh v.*

5   *Ashcroft*, 361 F.3d 1152, 1157 n. 3 (9th Cir.2004) (issues not raised in opening brief are typically

6   deemed waived); *Jones v. Astrue*, 2010 WL 5111457 (E.D. Cal. 2010) (arguments raised for the

7   first time in a reply brief are waived); *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n.

8   8 (9th Cir.2009) ("arguments not raised by a party in an opening brief are waived.") (citing

9   *Eberle v. Anaheim*, 901 F.2d 814, 818 (9th Cir.1990)).

10         Plaintiff argues in her Reply Brief that the ALJ erred in finding that Plaintiff could

11   perform her past relevant work even if Dr. Borgquist's limitations were accepted.  This

12   argument, however, was not raised in Plaintiff's Opening Brief, and is deemed waived.[11]

13                                    **CONCLUSION**

14         Based on the foregoing, the Court finds that the ALJ's decision is supported by

15   substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly,

16   this Court  RECOMMENDS that:

17         1.      Plaintiff's motion for summary judgment be DENIED;

18         2.      The Commissioner's cross-motion for summary judgment is GRANTED;

19

20

---

21         [10] The ALJ also found that the presumption of continuing non-disability applied to Plaintiff's current claims, as Plaintiff had failed to provide new and material evidence of a greater disability since the February 2003 decision.

22   (AR at 18.) The Court does not analyze this aspect of the ALJ's decision, however, because the Court has affirmed the ALJ's decision on the merits. Notably, because Plaintiff did not raise this issue it her Opening Brief, this

23   argument is waived. *See Singh v. Ashcroft*, 361 F.3d 1152, 1157 n. 3 (9th Cir.2004)

24         [11] Even if Plaintiff had not waived this issue, and Plaintiff was correct that the ALJ erred in this analysis, such error was harmless. *See Steeves v. Comm. Soc. Sec.,* 2009 WL 3165217 (E.D. Cal. 2009) ("The Ninth Circuit

25   has applied harmless error analysis in social security cases in a number of contexts.") The ALJ did not accept Dr. Borgquist's standing, sitting and walking limitations, nor did the ALJ accept Dr. Borgquist's opinion that Plaintiff

26   needed to lie down or elevate her legs for one - three hours a day.  Rather, the ALJ concluded, based on substantial evidence in the record, that Plaintiff has the residual functional capacity to perform a full range of work at all

27   exertional levels, with the limitation that Plaintiff is to wear gray filters for glare reduction and bifocal glasses. Accordingly, the ALJ's statement that Plaintiff could perform her past relevant work, *even if* he accepted Dr.

28   Borgquist's limitations was harmless error.

1    3.      The Clerk of Court enter judgment in favor of the Commissioner of Social

2            Security, and against Plaintiff Laurie Thacker.

3          These findings and recommendations will be submitted to the Honorable Lawrence J.

4    O'Neill, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fifteen (15) days after

5    being served with these findings and recommendations, the parties may file written objections

6    with the Court. The document should be captioned "Objections to Magistrate Judge's Findings

7    and Recommendations." The parties are advised that failure to file objections within the specified

8    time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153

9    (9th Cir. 1991).

10         IT IS SO ORDERED.

11   **Dated:    May 31, 2012           /s/ Barbara A. McAuliffe**
                                        UNITED STATES MAGISTRATE JUDGE

19